Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213

DANIEL WEBB
425 WEST CAPITOL AVENUE
SUITE 1586
LITTLE ROCK AR 72201

EXHIBIT

B

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1942

May 10, 2018

Daniel A. Webb
425 WEST CAPITOL AVENUE
SUITE 1586
LITTLE ROCK, AR 72201

RE: Long Term Disability (LTD) Benefits
Acxiom Corporation
Claim #: 5716432
Claimant: Shane Keathley

Dear Mr. Webb:

We reviewed your client's appeal request for Long Term Disability ("LTD") benefits and maintained the decision to deny benefits beyond November 7, 2017.

**Initial Claim Decision**

Mr. Keathley submitted a claim for his absence from work beginning December 2, 2015 following surgery to implant an ICD. LTD benefits were approved from June 1, 2016 through November 7, 2017. Benefits beyond November 7, 2017 were denied as the evaluation concluded Mr. Keathley was no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated November 7, 2017. Mr. Keathley was provided an opportunity to request an appeal review of the denial, stating the reasons why he felt his claim should not have been denied, and submit additional information to support the claim. Specifically, Mr. Keathley was advised to submit the following information: all treatment notes, diagnostic tests, radiology results, operative and procedure reports from all providers including Dr. Cilingiroglu and any provider who treated him from December, 2015 through the present that had not already been submitted for review; physician documentation to support the specific restrictions and limitations given by his providers, including an explanation of how they preclude Mr. Keathley from performing the substantial and material duties of his own occupation; therapy notes, medications prescribed and filled; hospitalization records; as well as any additional information which he felt would support his claim. The medical documentation should clearly show impairment from a physical or psychiatric illness precluded him from performing the duties of any occupation with respect to medically supported restrictions and limitations.

**Appeal**

EXHIBIT
B

In your letter of appeal dated April 4, 2018, you requested an appeal review of Mr. Keathley's denied LTD claim. You noted Mr. Keathley suffered from coronary artery disease, ischemic cardiomyopathy, obstructive sleep apnea, anxiety/depression, hyperlipemia, and hypertension.

You noted Dr. Cilingiroglu diagnosed Mr. Keathley with Congestive Heart Failure New York Heart Association Class III. Mr. Keathley may only sit and stand/walk a total of less than 2 hours in an 8 hour work day and "cannot work" in a competitive work situation.

You noted Mr. Keathley's prescription records demonstrated he was receiving ongoing treatment for not only heart issues, but depression/anxiety, a condition that should not surprise anyone given Mr. Keathley's heart condition. He also has sleep apnea.

You noted Bob White, a vocational expert stated Mr. Keathley was unable to work.

In support of Mr. Keathley's claim, you submitted the following information:

- November 10, 2017 letter of Mehmet Cilingiroglu, MD, FESC, FSCAI, FACC
- Cardiac Medical Source Statement, January 10, 2018, Dr. Cilingiroglu
- May 3, 2017, July 12, 2017, January 10, 2018, February 23, 2018 treatment notes of Dr. Cilingiroglu
- October 24, 2017 treatment notes of Scott Beau, MD
- September 13, 2017 treatment notes of Patrick Stage, APN
- Vocational Evaluation of Robert W. White, MSE, Vocational Specialist, February 26, 2018
- Affidavit of Shane Keathley March 26, 2018

**Appeal Evaluation**

During the claim evaluation for ongoing benefits, Mr. Keathley's claim was reviewed by a consulting physician board certified in cardiovascular disease, nuclear cardiology and echocardiography. This review noted Mr. Keathley was a 43-year-old gentleman with a history of coronary artery disease with a myocardial infarction in 2014 requiring PCI of the LAD and subsequent PCI of the right coronary artery. He had a fluctuating ejection fraction but ultimately was measured consistently in the 20-30% range and he underwent a biventricular ICD implant. The medical records over the last 6 months varied in describing his functional capacity. He was evaluated for an experimental left ventricular device in February at which time he was described as New York Heart Association class I, Canadian class 0 and had a 6 minute walk test achieving 1522 feet. He was not felt to be a candidate for the device because of his good functional capacity. He was placed on a diuretic for the first time in April because of occasional swelling. A follow-up cardiac catheterization after his interventions has shown non obstructive disease.

The consulting cardiologist concluded Mr. Keathley's impairing diagnosis was ischemic cardiomyopathy. Telephone contact was made with Dr. Mehmet Cilingiroglu on June 1, 2016 and again on October 19, 2017. Dr. Cilingiroglu indicated Mr. Keathley could safely attempt to return to full-time sedentary type employment described as: occasionally lifting up to 10 pounds, occasional standing and walking short distances and unlimited sitting. The ideal employment would be that in a desk job with occasional bending/kneeling/squatting and pulling/pulling up to 10 pounds of force. There was no limitation in terms of keyboarding. The medical records supported this opinion.

The consulting physician noted Mr. Keathley had a severe cardiomyopathy but was clinically in

New York Heart Association class I indicating that he had no symptoms of congestive heart failure despite the severity of his underlying disorder. He was recently evaluated for an experimental device and had good exercise tolerance on a 6 minute walk test which corroborated his good exercise tolerance. In this setting it was safe for Mr. Keathley to return to sedentary type capacity. As he has a relatively fixed cardiac output, it was unlikely he would be able to tolerate physical activity above a sedentary level. Indeed, as was acknowledged by his cardiologist during our telephone call, the severity of his underlying cardiomyopathy may not allow him the stamina for full-time employment, but it was certainly safe for him to attempt this. His restrictions could be considered permanent.

Mr. Keathley's claim was previously reviewed by a vocational consultant, who completed an occupational analysis to identify the material and substantial duties of Mr. Keathley's occupation as it is normally performed in the national economy. The analysis showed the job tasks of Mr. Keathley's job as a Senior TL of Engineering fell under the DOT code of Software Engineer (DOT: 030.062-010) and SOC/O*NET classification of Software Developers, Applications (SOC # 15-1132.00). The occupation falls under the Occupational Outlook Handbook (OOH) description of Software Developers.

Based upon the research as outlined above, the vocational consultant concluded this occupation was performed at the sedentary level of physical demand levels in the national economy. The Department of Labor defines sedentary work as:

> *Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists form 1/3 to 2/3 of the time) to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief amounts of time. Jobs are sedentary if walking or standing are required only occasionally and all other sedentary criteria are met.*

**Positional Requirements:**

- Frequent: sitting, fingering
- Occasional: reaching, handling, standing, walking
- No: bending/stooping, crouching/squatting, twisting, climbing, crawling, kneeling or balancing

The disability case manager concluded based on the supported restrictions and limitations and the occupational duties of a Software Engineer that Mr. Keathley was no longer Disabled as defined by the Policy.

During the review of Mr. Keathley's appeal, his claim was reviewed by Rizwan A. Karatela, M.D., an independent physician board certified in cardiovascular disease. Based on his review of the medical records, Dr. Karatela concluded the medical documentation did support diagnoses causing functional impairment from November 7, 2017 to the present. The functional impairment was supported for sedentary work.

Dr. Karatela noted the following restrictions applied to the diagnoses of coronary artery disease (CAD), acute ST elevation myocardial infarction (STEMI), ischemic cardiomyopathy, chronic systolic heart failure with reduced LV ejection fraction and Automatic Implantable Cardioverter Defibrillator (AICD) implantation. Mr. Keathley has symptoms of reduced exercise tolerance and

dyspnea and this would make performing light work unlikely where he would need to perform prolonged standing/walking. In all likelihood, he is probably only capable of performing sedentary work. Mr. Keathley can perform sustained full time sedentary level work capacity with the following restrictions and limitations: lift, carry, and push/pull up to 10 pounds occasionally. Sitting for up to 60 minutes at one time then needing a 10 minute break for position change prior to resuming sitting activities for a total of 6 hours in an 8 hour day. Stand and walk up to 20 minutes at one time; each activity, then needing a 10 minute break for position change prior to resuming stand/walk activities for a total of 2 hours combined in an 8 hour day. No restrictions with repetitive hand movement and keyboarding.

Due to the present of Automatic Implantable Cardioverter Defibrillator (AICD) Mr. Keathley is restricted from climbing ladders, driving commercial vehicle or operate heavy machinery.

Relative to the timeframes of November 7, 2017 to the present, Dr. Karatela indicated the medical records did not indicate any reported or observed cognitive and/or physical side effects attributed to Mr. Keathley's medications.

There was noted to be minor feeling of tiredness and fatigued due to Carvedilol reported which was ratified by reducing the dosage and reportedly it was resolved. This is a common occurrence and was appropriately resolved. Besides that there was no other documentation of medication side effects.

Dr. Karatela noted the medical documentation did not support that any medical condition alone, or in combination would preclude Mr. Keathley from sustained occupational functioning on a full-time basis at a sedentary level.

He noted Mr. Keathley was a 45 year old male with past medical history significant for coronary artery disease (CAD). Mr. Keathley presented with acute myocardial infarction on January 12, 2014. He underwent successful percutaneous coronary intervention (PCI) of left anterior descending artery (LAD) on with drug eluting stenting (DES). He was noted to have reduced LV systolic function as result of acute myocardial infarction.

Since his myocardial infarction Mr. Keathley has been closely followed by his cardiologists. About 5 months later (May 2014) he had another intervention which he had his right coronary artery (RCA) stenting. No reported repeated myocardial infarction.

Subsequently he was left with ischemic Cardiomyopathy (ICM) with reduced ejection fraction 25-30% complain of fatigue, tiredness and decreased capacity. In 2014 and 2015 his ejection fraction improved and reportedly was able to return to work. In 2015 his ejection fraction remained persistent low and required Automatic Implantable Cardioverter Defibrillator (AICD) on December 2, 2015.

The following observation from the medical records indicated to Dr. Karatela that while Mr. Keathley had significant history of coronary artery disease (CAD) and ischemic cardiomyopathy his course from July 2017 has been stable.

On July 12, 2017, Mr. Keathley was seen by Dr. Cilingiroglu (cardiology) in office follow up from his recent hospitalization for chest pain. He reported he had normal Pro BNP. His last

echocardiogram showed mildly reduced LVEF of 45-50% with moderately increased LV cavity. During the hospitalization he was found to have LVEF of 40% with patent proximal LAD stent with mid 30% stenosis, mid RCA 30%, and patent distal RCA stent. Dr. Cilingiroglu said "Seems to be doing well with no angina since that night". His BP was noted 122/80 mmHg, and the cardiac examination was reported within normal limits. He was advised to continue his medication and follow up in 6 months.

On September 13, 2017, Mr. Keathley was seen by Patrick Stage, APN (cardiology) in office follow up. Reportedly no chest pain, no syncope. ICD interrogation done in office. On examination BP was 117/80 mmHg, the cardiac examination was reported within normal limits. Noted CHF with NYHA functional Class III but no JVD and no edema noted and lung clear. No objective information to collaborate class III congestive heart failure (CHF) in the note. Follow up visit in 3 months. The objective data does not correlated with class III CHF.

Note by definition; NYHA functional Class III. Patients with cardiac disease resulting in marked limitation of physical activity. They are comfortable at rest. Less than ordinary activity causes fatigue, palpitation, dyspnea, or anginal pain.

On October 19, 2017, a correspondence letter from Dr. Robert Morrison, consulting physician to Dr. Mehmet Cilingiroglu was noted, "As we discussed, you indicated that Mr. Keathley's restrictions and limitations in a full time occupational capacity remain unchanged from our conversation in June of 2016. Specifically you indicated that he could safely attempt to return to full-time sedentary type employment described as: occasionally lifting up to 10 pounds, occasional standing and walking short distances and unlimited sitting. The ideal employment would be that in a desk job with occasional bending/kneeling/squatting and pulling/pulling up to 10 pounds of force. There is no limitation in terms of keyboarding".

On November 10, 2017, a letter by cardiologist, Dr. Mehmet Cilingiroglu, indicated, "has history of massive anterior myocardial infarction s/p multiple PCI's, severe cardiomyopathy with LBBB, eventually requiring Bi-V AICD implantation. He continues to be disabled. He cannot and should not be in a stressful environment".

On December 24, 2017, Mr. Keathley was seen by Dr. Scott Beau in cardiology for cardiomyopathy, congestive heart failure (CHF) and ICD follow up. Noted to have "some positional chest pain not consistent with angina". The blood pressure was 127/29, and pain scale 0 (1-10 scale). The cardiac examination was reported within normal limits. Follow up in 3 months. No changes noted. No reported decompensated congestive heart failure (CHF).

On January 10, 2018, Mr. Keathley was seen by Dr. Cilingiroglu (cardiology) in office follow up he noted Mr. Keathley comes in for follow up. He has CAD s/p PCI and MI. Also has ischemic CM with AICD. He has been at times sleepy and not doing much. No angina. Still has significant fatigue at rest as well as with minimal exercise. We recommended for him to reconnect with our cardiac rehab program for healthier lifestyle. Consulted him about weight loss and healthy eating. Trying to get his long term disability. The examination reported his BP of 128/82 mmHg, the pulse of 80 bpm, his weight was 227 pounds, and the Oxygen saturation of 95%. His cardiac examination reported normal. Specifically there was no signs of volume overload with no jugular vein distention, lung reported clear and no lower extremities edema reported. His medical therapy was continued without much change and he was advised to follow up in 6 months.

Dr. Karatela found no objective data to indicate something changed from October 2017. Medical information did not contain enough objective data such as disabling symptoms, limitations, or abnormal exam findings or abnormal cardiac testing that would suggest significant cardiac impairment precluding him from sedentary level work. The medical records provided no evidence of acute congestive heart failure (CHF) requiring hospitalization, myocardial infarction or significant arrhythmia that would indicate that Mr. Keathley had any acute cardiac event that prevented him from working. Therefore. the clinical information does not support functional impairment from cardiology perspective during the periods of time in question that he cannot do sedentary level work as noted above.

Dr. Karatela was asked if he agreed with Dr. Cilingiroglu's assessment of NYHA Class III designation and that Mr. Keathley was unable to work. Dr. Karatela indicated Dr. Mehmet Cilingiroglu has noted Mr. Keathley with a diagnoses of CHF and a NYHA Class III designation and as a result cannot work. While at the time of his initial myocardial infarction (January 2014) and several months afterwards he was characterized as CHF class III, but for the review period in question Dr. Karatela did not agree with this assessment for the following reasons outlined above.

On January 10, 2018 Mr. Keathley was seen by Dr. Cilingiroglu (cardiology) in office follow up he noted "comes in for follow up." He has CAD status post PCI and MI. Also has ischemic CM with AICD. He has been at times sleepy and not doing much. No angina. Still has significant fatigue at rest as well as with minimal exercise. We recommended for him to reconnect with our cardiac rehab program for healthier lifestyle. Consulted him about weight loss and healthy eating. Trying to get his long term disability. The examination reported his BP of 128/82 mmHg, the pulse of 80 bpm, his weight was 227 pounds, and the Oxygen saturation of 95%. His cardiac examination reported normal. Specifically there was no signs of volume overload with no jugular vein distention, lung reported clear and no lower extremities edema reported. His medical therapy was continued without much changes and he was advised to follow up in 6 months.

Briefly, noted CHF with NYHA functional Class III but no JVD and no edema noted and lung clear. No objective information to collaborate class III congestive heart failure (CHF) in the note. The objective data does not correlated with class III CHF. Follow up visit in 6 months suggested fairly stable congestive heart failure (CHF) with no intensified follow up required most likely not Class III but probably Class II, based on the noted Dr. Karatela reviewed.

Note by definition; NYHA functional Class III. Patients with cardiac disease resulting in marked limitation of physical activity. They are comfortable at rest. Less than ordinary activity causes fatigue, palpitation, dyspnea, or anginal pain. There is no indication in the notes to suggest that Mr. Keathley has this.

The appeal review concludes the medical evidence supports Mr. Keathley is impaired by his diagnoses of coronary artery disease (CAD), acute ST elevation myocardial infarction (STEMI), ischemic cardiomyopathy, chronic systolic heart failure with reduced LV ejection fraction and Automatic Implantable Cardioverter Defibrillator (AICD) implantation. Mr. Keathley has symptoms of reduced exercise tolerance and dyspnea and this would make performing light work unlikely where he would need to perform prolonged standing/walking. The medical evidence supports reasonable restrictions and limitations of lift, carry, and push/pull up to 10 pounds occasionally. Sitting for up to 60 minutes at one time then needing a 10 minute break for position change prior to

resuming sitting activities for a total of 6 hours in an 8 hour day. Stand and walk up to 20 minutes at one time; each activity, then needing a 10 minute break for position change prior to resuming stand/walk activities for a total of 2 hours combined in an 8 hour day. No restrictions with repetitive hand movement and keyboarding.

We disagree with Dr. Cilingiroglu's assessment of NYHA Class III designation and that Mr. Keathley was unable to work because the medical evidence does not indicate JVD and no edema noted and lung clear. No objective information was documented to collaborate class III congestive heart failure (CHF) in the notes. Follow up visit in 6 months suggested fairly stable congestive heart failure (CHF) with no intensified follow up required.

The clinical evidence does not support the conclusion that job related stress would exacerbated Mr. Keathley's health conditions or that a return to his prior occupation would be dangerous to his health from a cardiovascular perspective.

Based on the clinical literature, there is no definitive evidence that return to work in a specific case would exacerbate the progression of cardiovascular disease or that restriction from work would necessarily ameliorate progression of disease or reduce the risk of recurrent adverse cardiovascular events. There is some evidence that cardiac rehabilitation programs including stress reduction interventions may be beneficial, although results of these trials have been variable; there have been no controlled trials pertaining specifically to work stoppage. Therefore, the restrictions and limitations outlined by the physician peer reviewers remain reasonable and are within the functional demand level for Mr. Keathley's occupation.

We acknowledge Mr. Keathley has been approved for Social Security Disability benefits, however, determinations made by Liberty Life Assurance Company of Boston are based on the provisions outlined in Acxicom Corporation's Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. Therefore, an award of Social Security Disability Benefits is not determinative of entitlement to benefits under the specific terms and conditions of the Group Disability Income Policy.

In our review of Mr. Keathley's claim, we fully considered the totality of all medical and vocational documentation received; including updated medical records dated after Mr. Keathley's Social Security Notice of Award dated April 17, 2016.

Furthermore, we obtained updated medical records and reviews by medical experts based on the claim file documentation that was in Mr. Keathley's file and provided on appeal. This current information has not been considered by the Social Security Administration in its determination process.

Our role in reviewing Mr. Keathley's file is to determine whether his medical condition and the medical documentation contained in the file supports that he was unable to perform the material and substantial duties of his own occupation beyond November 7, 2017. Our review concludes the medical evidence and claim file documentation does not support Disability beyond that date.

**Conclusion**

We conducted a thorough and independent review of the entire claim. We Mr. Keathley continued to

experience symptoms associated with his condition beyond November 7, 2017 that are impairing. However, the information does not contain exam findings, diagnostic test results or other medical documentation supporting Mr. Keathley's symptoms remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering him unable to perform the duties of his occupation after that date.

Having carefully considered all of the information submitted in support of your claim, our position remains that Proof of continued disability in accordance with the Policy provisions after November 7, 2017 has not been provided. Therefore, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**Policy Provisions**

To continue receiving benefits, you must satisfy the requirements of all Policy provisions that state, in part:

*"**Disability**" or "**Disabled**" means:*

1. *For persons other than pilots, co-pilots, and crewmembers of an aircraft:*
    i. *that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and …*

*"**Material and Substantial Duties**" means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

*"**Own Occupation**" means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.*

*"**Proof**" means the evidence in support of a claim for benefits and includes, but is not limited to, the following:*

1. *a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;*
2. *an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and*
3. *the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.*

*Proof must be submitted in a form or format satisfactory to Liberty.*

***Discontinuation of the Long Term Disability Benefit***
*The Monthly Benefit will cease on the earliest of:*

…

8. *the date the Covered Person is no longer Disabled according to this policy;*

The Policy also states the following regarding legal proceedings:

***Legal Proceedings***
*A claimant or the claimant's authorized representative cannot start any legal action:*

1. *until 60 days after Proof of claim has been given; or*
2. *more than one year after the time Proof of claim is required.*

For purposes of this claim, the time proof of claim is required is based on the date of the denial letter, November 7, 2017. The contractual statute of limitations period under the Legal Proceedings provision would begin on November 7, 2017 and will expire on November 7, 2018.

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, Mr. Keathley was entitled to appeal the decision made by Liberty Life Assurance Company of Boston (Liberty), and to submit any additional information he wished to be considered as part of the appeal. Liberty conducted a full and fair review of the appeal and accompanying materials, and concluded the denial of benefits will be maintained.

At this time, Mr. Keathley's administrative right to review is exhausted; no further review will be conducted by Liberty and the claim will remain closed. Mr. Keathley may request to receive, free of charge, copies of all documents relevant to his claim. Mr. Keathley has the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

Nothing in this letter should be construed as a waiver of any Liberty Life Assurance Company of Boston rights and defenses under the above captioned Policy, and all rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Liberty Life Assurance Company of Boston are based on the provisions outlined in Acxiom Corporation Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities.

If you require language translation assistance, please contact Liberty Life to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłįį' dóó ná'ookąąh nííní'ąągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtįįł nínízingo doo bąąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Michelle Cole
Appeal Review Consultant
Phone No.: (888) 437-7611 Ext. 16404
Secure Fax No.: (603) 430-1942